IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORI ALFONSO,

                         Plaintiff,                                CV-07-1208-ST

              v.                                             OPINION AND ORDER

TRI-STAR SEARCH LLC, *et al*,

                         Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Lori Alfonso, filed this case on August 14, 2007, against her former employer, Tri-Star Search LLC ("Tri-Star"), and its owners and managers, Rudi Bellinazzo and Chawn Peterson. Her Amended Complaint alleges claims for retaliation in violation of the Employee Retirement Income Security Act ("ERISA"), 29 USC § 1140, retaliation in violation of ORS 652.355, breach of the covenant of good faith and fair dealing, and invasion of privacy. On May 4, 2009, this court granted defendants' motion for summary judgment against all counts,

entered final judgment in favor of defendants, and dismissed the Amended Complaint with prejudice.

Pursuant to 20 USC § 1132(g)(1), 28 USC § 1927, FRCP 11 and 54(d), and under the terms of the employment agreement, defendants now move for an award of their attorney fees of $82,580.00 and costs of $17,594.00 (docket #84).  For the reasons that follow, defendants' motion for attorney fees is denied and the Bill of Costs is denied in part and deferred in part.

### DISCUSSION

I.   **Attorney Fees Under ERISA**

A.   **Legal Standards**

In ERISA actions, the court may award attorney fees and costs to prevailing parties, including employers.  29 USC § 1132(g)(1); *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F2d 1410, 1415 (9th Cir 1984).  When exercising this discretion, a district court must consider:

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing parties to satisfy an award of fees;
> (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances;
> (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and
> (5) the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.*, 634 F2d 446, 453 (9th Cir 1980).

"None of the *Hummell* factors is 'necessarily decisive;' various permutations and combinations can support an award of attorney fees."  *Paddack v. Morris*, 783 F2d 844, 846 (9th Cir 1986), quoting *Russell*, 726 F2d at 1416.  When a district court applies the *Hummell* factors, it "must keep at the forefront ERISA's remedial purposes that should be liberally construed in favor of protecting participants in employee benefit plans."  *McElwaine v. US West, Inc.*, 176

F3d 1167, 1172 (9ᵗʰ Cir 1999) (citation and internal quotes omitted).  "[T]he equitable factors set forth in [*Hummell*] very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *Corder v. Howard Johnson & Co.*, 53 F3d 225, 231 (9ᵗʰ Cir 1995) (citations and quotes omitted).  However, the Ninth Circuit has stressed that the *Hummell* attorney fee analysis does not "favor one side or the other in ERISA fee cases[,]" because "[t]he statute is clear on its face – the playing field is level." *Shockley v. Alyeska Pipeline Serv. Co.*, 130 F3d 403, 408 (9ᵗʰ Cir 1997).

### B.    Analysis of Factors

#### 1.    Culpability/Bad Faith

In order to avoid a finding of bad faith under the first *Hummell* factor, plaintiffs "must have a reasonable belief that they could prove an actionable ERISA claim." *Cline v. The Indus. Maint. Eng'g & Contracting Co.*, 200 F3d 1223, 1236 (9ᵗʰ Cir 2000), citing *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 25 F3d 743, 749 (9ᵗʰ Cir 1994).

Defendants point to several facts as demonstrating Alfonso's bad faith in filing this case. First, they rely on the June 5, 2007 email from Alfonso to her attorney which reads:

> My co-worker, Mark Crowl, and I would like to leave our current employer but we have non-compete agreements.  Our employer has broken several Labor Laws so were [*sic*] hoping we could use that to our advantage.

Bellinazzo Decl. (docket #45), ¶ 27, Ex. 7.

According to defendants, this email reveals that this entire lawsuit was merely a device to free Alfonso of the restrictions of her noncompetition and nonsolicitation agreement with Tri-Star.

Defendants also point to "numerous contradictions" in Alfonso's account of her purpose in bringing this case to show that she fabricated it as revenge for her lawful termination.  For example, Alfonso has not explained the change in her initial belief that her boss, Bellinazzo, did not intentionally withhold her IRA (individual retirement account) contributions as evidenced by contemporaneous email records.  She also has given conflicting and, in defendants' view, spurious explanations for her statements when she was fired which seemingly indicate that she knew she was fired for disloyalty and not for complaining about her IRA.

Finally, defendants argue that Alfonso's bad faith is demonstrated by her attorney initially agreeing that proof that defendants intercepted her personal email should be available through computer forensics and would be an essential component of their case.  Yet she quickly changed that position when it became apparent that computer forensics did not support her theory.

Alfonso responds point by point, and, not surprisingly, draws more favorable inferences from these same facts.  She also cites to other evidence in the record to show that her interpretation of the facts is more reasonable.

These issues were fully addressed in the Opinion and Order granting defendants' summary judgment motion, and the parties varying interpretations of the record are largely irrelevant to the attorney fee issue.  The court will judge Alfonso's good faith solely by the quality of the evidence she submitted in support of her case and not by various intentions and motivations defendants seek to attribute to her actions based upon their one-sided view of the evidence.

This court previously found that Alfonso had presented sufficient facts to establish a *prima facie* claim of ERISA retaliation due to the proximity between her termination and protected conduct and her past behavioral problems for which she had not been disciplined prior to her termination. But her claim failed at the pretext stage of the analysis for several reasons.

First, timing of her termination, coupled with the several minor slights Alfonso perceived after she complained of missing IRA contributions, did not present a genuine issue of material fact sufficient to contradict defendants' contention that Alfonso was fired for disloyalty in attempting to recruit one of her co-workers to a different company.

Second, Alfonso failed to raise a genuine issue of material fact showing that Bellinazzo, or anyone else at Tri-Star, had been able to access her personal email account to read the June 5, 2007 email and several related emails. This last issue was essential to Alfonso's case in order to link her termination to protected conduct over a year earlier or to her allegedly protected conduct of visiting her attorney on the day of her termination. Proof that Bellinazzo or someone else at Tri-Star had read her personal email would have raised a genuine issue of material fact that her termination was motivated in part by her efforts to enforce rights protected by ERISA. Defendants presented affirmative evidence, in the form of testimony by all relevant parties and a computer expert, which demonstrated that the emails in question had never been viewed by anyone at Tri-Star, and, thus, no one knew of her meeting with her attorney. Alfonso was unable to present any evidence creating a genuine issue of fact that someone had viewed the email and knew of her meeting. Thus, her claim failed at the pretext level for lack of proof to controvert Tri-Star's legitimate reason for firing her.

While this court concluded that the evidence was not sufficient to raise an issue for trial, it did not conclude that Alfonso unreasonably believed that Bellinazzo was reading her personal email. Defendants admitted that Bellinazzo had spyware software installed on all company computers and, in the June 5, 2007 email, Alfonso expressed fear that Bellinazzo had been reading her work email. Alfonso received the telephone call demanding her to return to the office while she was in the meeting with her attorney and was terminated almost immediately afterward. Based on these facts, Alfonso could reasonably believe that Bellinazzo had read the emails and that her effort to enforce her ERISA rights was a motivating factor in her termination, that is, that she had an actionable ERISA claim. Although the evidence ultimately failed to show that Bellinazzo had been able to read her personal email, this failure of proof does not establish bad faith by Alfonso in bringing her claim.

The analysis, however, does not end with Alfonso's decision to file the ERISA claim. Alfonso's attorney admits that initially she believed the evidence in this case would be recoverable through computer forensics. Yet even after defendants obtained these forensics at the cost of at least $14,550, and after the analysis proved favorable to defendants, Alfonso elected to forgo obtaining her own competing evidence. She instead chose to pursue her claim solely on the circumstantial evidence which this court ultimately found insufficient. Alfonso's attorney explains that after consulting with several computer experts, she concluded that any such investigation would be fruitless. However, she believed that the circumstantial evidence (primarily the close timing of Alfonso's meeting with her attorney and her termination) was sufficient to reach a jury. Alfonso has provided evidence that this was an informed, strategic decision, and not one made in bad faith simply to doggedly pursue a meritless claim. *See* Allen

Decl. (docket #100), ¶4; Alfonso Decl. (docket #115), ¶¶ 2, 3; Crowl Decl. (docket #116), ¶¶ 7-12.  That this strategy proved to be flawed does not convince this court that it was pursued in bad faith.

Often in employment discrimination cases, the employee can only produce circumstantial evidence.  On a motion for summary judgment, the court must consider whether that circumstantial evidence is sufficient to submit the employee's claim of discrimination to a jury.  In this case, there is no doubt that Alfonso believed she was discriminated against because she pursued her rights protected by ERISA.  Her evidence to support this belief established a *prima facie* case, but proved insufficient to prevail.  Therefore, this factor weighs against awarding attorney fees.  *See Kimbro v. Atl. Richfield Co.*, 889 F2d 869, 881-82 (9th Cir 1989) (affirming the district court's denial of attorneys fees to defendant who prevailed at summary judgment despite the fact that the plaintiff had failed to adduce sufficient evidence to establish a *prima facie* case of ERISA retaliation), *cert denied*, 498 US 814 (1990).

### 2. <u>Ability to Pay</u>

Defendants next argue that Alfonso is fully capable of paying the nearly $100,000 in fees and costs they request.  As support, they submit several declarations of individuals purporting to possess personal knowledge of the extent of her resources.  Tri-Star manager Chawn Peterson states that Alfonso earned approximately $200,000 in 2006 while at Tri-Star and that Alfonso has made several statements concerning her resources, such as claiming she "got everything" and her husband "got nothing" in her recent divorce and that she paid cash for a $37,000 automobile.  Peterson Decl. (docket #86), ¶ 2.  Peterson also states that Alfonso received $10,000 for a wage claim she asserted after her termination.  *Id.*  Bellinazzo avers that Alfonso made similar income

in 2007 to the $200,000 she made in 2006, and that she told him that any income above $100,000 was pure "spending money." Bellinazzo Decl., (docket #108), ¶ 2. Alfonso's ex-husband states that Alfonso was awarded "virtually all" of the cash or similar accounts in their divorce, and expresses his disbelief that "given [] Alfonso's skills and quality of work . . . she would be unable to maintain her recruiting business at a sustainable level." Bial Decl. (docket #106), ¶¶ 14, 23. He also asserts that over the course of their marriage, Alfonso's net worth increased from less than $30,000 to over $300,000 and that she was awarded $300,000 in net assets from their divorce. *Id*, ¶¶ 15, 18. According to his assessment of her assets, he "would be surprised" if Alfonso lacked sufficient assets to pay approximately $80,000 in fees and costs. *Id*, ¶ 19.

Alfonso, on the other hand, maintains that if she is assessed attorney fees or costs, she will be forced into bankruptcy. Alfonso Decl. (docket #98), ¶ 33. Because the non-compete agreement with Tri-Star prevented her from pursuing her profession for two years, she was unemployed for five months after her termination and then accepted a job that paid "substantially less" than her job at Tri-Star. *Id*, ¶¶ 5-7. This job ended in December 2008, forcing her to go on unemployment while she attempted to start her own executive search firm. *Id*, ¶¶ 8-12. Finally, Alfonso avers and submits declarations from third parties to show that starting her new business was made more difficult by Tri-Star employees proactively telling former clients she had been terminated and spreading other rumors about her. *Id*, ¶¶ 16-17; *See* Ruot Decl. (docket #94), ¶ 9; Burris Decl. (docket #96), ¶ 3; Garrison Decl. (docket #92), ¶¶ 2-3; King Decl. (docket #97), ¶ 1; Harty Decl. (docket #99); ¶¶ 2-6. In addition, Alfonso's financial advisor asserts that if this court awards attorney fees to Tri-Star, based on her current financial position, it would "in all likelihood force [Alfonso] into bankruptcy." Riback Decl., ¶ 12. He confirms that Alfonso's

divorce took a huge financial toll on her, depleting her savings and causing her to accumulate thousands of dollars in legal fees. *Id*, ¶¶ 14, 18.

The only persons with any personal knowledge of Alfonso's current financial state are Alfonso and her financial advisor. The testimony of her former employers, whom she has sued and whose company is presumably on the hook for the substantial fees in this case if this motion fails, is potentially biased. The testimony of her ex-husband, who professes no current knowledge of her financial condition, is unpersuasive. On the other hand, neither Alfonso nor her financial advisor provide any detailed information as to her current financial state. There is no evidence showing her present net worth, the present balance of any savings, investment, or retirement accounts, a list of her other personal assets, or her income from her new executive search company. Given this lack of evidence, the court will not speculate on Alfonso's ability to pay. Thus, this factor is neutral.

### 3.    Deterrence and Benefit to Others

Courts have observed that the third and fourth factors are "'more appropriate to a determination of whether to award fees to a plaintiff than a defendant' because the 'policy reasons[] speak more appropriately to institutional litigants in the ERISA arena.'" *Huntsinger v. The Shaw Group, Inc.*, Civil No. 04-787-HA, 2006 WL 572134, *2 (D Or 2006) (brackets in original), quoting *Tingley v. Pixley-Richards West, Inc.*, 958 F2d 908, 910 (9th Cir 1992); *see also Marquardt v. N. Am. Car Corp.*, 652 F2d 715, 719 (7th Cir 1981) (considering factors three and four "more appropriate to a determination of whether to award fees to a plaintiff than a defendant"). These policy reasons include the observation that a losing employer "has necessarily violated ERISA," whereas a losing plaintiff "may only be in error or unable to prove

his [or her] case." *Russell*, 726 F2d at 1416.  Nevertheless, courts have still analyzed these factors in the context of a prevailing defendant's request for fees against an individual plaintiff. *See Corder v. Howard Johnson & Co.*, 53 F3d 225, 231-32 (9th Cir 1995); *Shockley*, 130 F3d at 408.

An award of attorney fees in this case would have an inappropriately deterrent effect on legitimate claims.  Alfonso's suit was not the type of frivolous claim which typically justifies an award of attorney fees.  *See Larson v. Univ. Women's Health Pension*, 971 F Supp 398, 400-01 (D Minn 1997) (granting attorney fees to defendant in part to deter frivolous claims clearly barred by the statute of limitations); *Ventilla v. U.S. Steel Corp. Plan for Employee Pension Benefits*, 642 F Supp 295, 297 (WD Pa 1986) (granting attorney fees to defendant to deter claims like plaintiffs which were speculative and sought what amounted to a double recovery of benefits already received).  Thus, the third factor weighs against awarding attorney fees.

The fourth factor is neutral because neither party sought to benefit any non-party to this case and no significant unresolved legal issues were presented.

### 5.    Relative Merit of Parties' Positions

The final factor is largely tied to the issue of the good faith of the party against whom fees are sought.  Of course, the merits favored defendants in this case, "as they presumably will always favor a prevailing party," *Corder*, 53 F3d at 232, but, as discussed above, Alfonso's case was not frivolous.  Because she had sufficient facts to establish a *prima facie* case of ERISA retaliation, but ultimately could not prove pretext, this factor is neutral.

### C.    Conclusion

Of the relevant factors, two weigh against awarding fees to defendants and three are neutral. Thus, an award of attorney fees to defendants for prevailing on the ERISA claim is not warranted.

## II.    Attorney Fees Under Employment Agreement

Defendants also seek attorney fees pursuant to a term of the employment agreement between Tri-Star and Alfonso. Paragraph 23 of that agreement provides that "[i]n any action brought to enforce the terms of this Agreement, the prevailing party shall be entitled to its reasonable attorney fees, costs and expert witness fees reasonably incurred therein, including any appeals." Bellinazzo Decl., (docket #45), ¶ 5 & Ex. 1.

Alfonso's Third Claim for relief alleged a claim for a breach of the covenant of good faith and fair dealing under Oregon law. Amended Complaint, ¶¶ 49-56. After incorporating all prior allegations, it specifically alleged that:

> Plaintiff's employment agreement with Tri-Star contains the implied covenant that neither party shall do anything that will have the effect of destroying the right of the other party to receive fruits of the contract. . .

> In terminating Plaintiff wrongfully and in retaliation for engaging in protected and proper conduct, Defendant Tri-Star destroyed the right of Plaintiff to receive the fruits of her employment contract as enforcement of the Non-competition Provision, [sic] renders her virtually unable to earn an income in her chosen field in or around the City of Portland where she owns her home and lives. . . .

> Defendant Tri-Star's motive in terminating Plaintiff was wrongful as alleged above.

Id, ¶¶ 50, 52-53.

Defendants argue that the Third Claim alleges a breach of an implied covenant of good faith and fair dealing in the enforcement of the terms of the employment agreement. Moreover,

11 - OPINION AND ORDER

because the wrongful and retaliatory conduct underlying the Third Claim was the same conduct underlying Alfonso's ERISA retaliation claim, defendants argue that they would have had to mount the same defense to both claims.

Alfonso first contests an award of fees under the agreement on procedural grounds by claiming that it is untimely and was presented in an impermissibly long memorandum.  With respect to its timeliness, defendants raised this additional basis for seeking attorney fees in their reply memorandum.  Ordinarily, it is improper to first raise an issue in a reply memorandum. *See United States v. Bohn*, 956 F2d 208, 209 (9th Cir 1992) (noting courts ordinarily decline to consider arguments raised for the first time in a reply brief); *Farrington v. Pepsi-Bottling Co. of Bend*, Civil No. 03-6297-TC, 2004 WL 817356, *2 (D Or Feb. 25, 2004) (refusing to consider issue first raised in a reply brief).  However, defendants requested leave of the court to brief this additional issue in their reply and to allow Alfonso the opportunity to respond (docket #103). The court granted that motion (docket #104).  Alfonso also asserts that this argument was presented after the 14-day deadline for filing motions for attorney fees and costs. FRCP 54(d)(2)(B); LR 54.1.  This argument ignores this court's authority under federal law and the Local Rules to issue appropriate orders with respect to motions for attorney fees and costs. FRCP 54(d)(2)(B); LR 54.3(d).  An extension of the time to present a new argument was implicit in this court's decision to grant defendants' motion to allow additional briefing.

Alfonso also asks this court to ignore defendants' reply memorandum because it exceeds the 10-page limit allowed by LR 54.1(c) and LR 54.3(e).  Ironically, Alfonso's response memorandum commits the same transgression.  Although defendants requested an extension of the page limitation on the final page of their reply memorandum, that request violated LR 7.1(c)

which requires motions to be filed as separate documents with a separately filed legal

memorandum and LR 7.1(b) which prohibits combining motions with a reply memorandum.

The request also violated LR 54.1(c) and LR 54.3(e) which require that leave for an extension of

the page limit must be obtained in advance of, not concurrently with, the filing of the offending

memorandum.  Additionally, both parties violated LR 7.1(e)(3) by filing memoranda not

expressly permitted by this court without seeking leave of the court.  The court finds both

parties' lack of compliance with the rules of this court very troubling.[1]  Notwithstanding these

procedural defects, this court will consider the issue raised by defendants.

Alfonso's only substantive response is that the agreement was not at issue in defendants'

motion for summary judgment and not the basis for defendants' success on its motion.  If the

court understands this argument correctly, Alfonso essentially argues that the Third Claim was a

side issue to her primary claim for ERISA retaliation upon which defendants prevailed at

summary judgment, such that defendants should not be entitled to attorney fees for the defense

of such an unimportant issue.  Because defendants sought and obtained summary judgment on all

claims, that argument is rejected.

Nevertheless, defendants are not entitled to attorney fees based on the attorney fee

provision in the employment agreement.  As defendants argued at summary judgment, to the

extent that Alfonso's Third Claim can be read as a claim for wrongful termination, it would be

preempted by ERISA as it complains that she was wrongfully terminated for engaging in rights

protected by ERISA.  *See Sorosky v. Burroughs Corp.*, 826 F2d 794, 799-800 (9th Cir 1987).  To

avoid this result, Alfonso argued that the Third Claim was broader than a simple wrongful

---

[1] The court finds the acidulous tone of the parties' briefing equally unhelpful and tiresome.

13 - OPINION AND ORDER

discharge claim by also asserting a claim for the retaliatory enforcement of the noncompetition

agreement.  The court summarily dismissed this claim because Alfonso had not shown the

existence of any such claim as retaliatory enforcement of a valid contract provision and because

the duty of good faith and fair dealing did not create obligations contrary to those expressly

agreed to in a contract.  *See Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or 638,

645, 891 P2d 639, 643 (1995).

      The patent weakness of the Third Claim, however, does not assist defendants.  The

agreement only provides for attorney fees in an "action brought to enforce the terms of this

Agreement."  Alfonso's Third Claim does not seek to enforce any specific term of the

employment agreement.  As discussed above, under one theory, the Third Claim complained of

rights arising under ERISA and, under the other theory advanced by Alfonso, the duty of good

faith and fair dealing she sought to enforce does not exist.  Thus, defendants' motion for attorney

fees based on the employment agreement is denied.

## III.    <u>Attorney Fees Under 28 USC § 1927 and Rule 11</u>

      Defendants finally seek attorney fees under 28 USC § 1927 or under FRCP 11.  With

respect to FRCP 11, defendants are required to present a separate motion for sanctions, not to

present an argument in a footnote in the memorandum supporting a motion for attorney fees.

LR 7.1(b).  Furthermore, the court declines the defendants' invitation to impose sanctions on its

own initiative pursuant to FRCP 11(c)(3).

      Neither will this court award attorney fees under 28 USC § 1927 which provides that for

the award of a party's costs, expenses, and attorney fees against "[a]ny attorney . . . who so

multiplies the proceedings in any cause unreasonably and vexatiously" which the party incurred

by that conduct.  *See West Coast Theater Corp. v. City of Portland*, 897 F2d 1519, 1528 (9th Cir

1990) (affirming § 1927 sanctions where counsel failed to provide any evidence of discriminatory intent, failed to answer interrogatories, failed to respond to a document demand, and failed to drop the case after improperly serving a defendant).  Sanctions under § 1927 must be supported by a finding of subjective bad faith which "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F3d 431, 436 (9th Cir 1996) (internal quotations omitted).

The court finds no such subjective bad faith on the part of Alfonso's attorney.  Even though the claims lacked merit, there is no evidence that Alfonso or her attorney filed them in bad faith.  That Alfonso ultimately was unable to prove the claims does not show that she brought them with reckless disregard of their validity.  Furthermore, there is no evidence that the defense of these claims multiplied defendants' efforts beyond those necessary to defend against her First Claim.  Her claim that defendants' acted with a retaliatory intent relied on almost entirely on the same facts as her additional claims.  Thus, defendants' motion is denied on this basis as well.

## IV.    <u>Bill of Costs</u>

Costs are awarded to the prevailing party in a civil action "[u]nless a federal statute, these rules, or a court order provides otherwise."  FRCP 54(d).  The expenses which may be taxed as costs are enumerated in 28 USC § 1920 as follows:[2]

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;

---

[2] The costs available in an ERISA claim are the same as those provided for by 28 USC §§ 1821 and 1920.  *Agredano v. Mutual of Omaha Cos.*, 75 F3d 541, 544 (9th Cir 1996).

15 - OPINION AND ORDER

> (2) Fees for printed and electronically recorded transcripts
> necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any
> materials where the copies are necessarily obtained for use in the
> case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of
> interpreters, and salaries, fees and expenses of special
> interpretation services under section 1828 of this title.

A court retains the discretion to allow or disallow costs to a prevailing party based on a variety of factors. *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F3d 572, 592 (9th Cir 2000). These factors include the amount of the costs involved, the plaintiff's ability to pay and the possibility that the award may leave the plaintiff indigent, and the potential chilling effect on future civil rights litigants of imposing the costs. *See Stanley v. Univ. of S. Cal.,* 178 F3d 1069, 1079-81 (9th Cir) (reversing district court's award of costs to defendants "particularly based on the district court's failure to consider . . . [plaintiff's] indigency, and the chilling effect of imposing such high costs on future civil rights litigants."), *cert denied*, 528 US 1022 (1999); *Nat'l Org. of Women v. Bank of Cal.*, 680 F2d 1291, 1294 (9th Cir 1982) (district court did not abuse its discretion in denying costs on basis of "plaintiffs' limited budgets").

Defendants seek to recover the costs incurred to obtain the deposition transcripts and computer forensics analysis used for their motion for summary judgment. Defendants' request for its expert witness fees beyond those permitted by 28 USC §§ 1821 and 1920 is precluded by *Agredano*, 75 F3d at 544. Thus, they are not recoverable.

Defendants request $2,898.88 for court reporter and transcription fees for seven depositions (Alfonso, Mark and Eric Crowl, Martin Ryan, Allan Dassonville, Peterson and Bellinazzo). While 28 USC § 1920(2) allows recovery of court reporter fees for stenographic

transcripts, such transcripts must be "necessarily obtained for use in the case." The cost of

taking depositions and obtaining deposition copies is properly taxed if introduced into evidence

or used at trial for impeachment or cross-examination. *Indep. Iron Works, Inc. v. U. S. Steel

Corp.*, 322 F2d 656, 678 (9th Cir), *cert denied*, 375 US 922 (1963). The cost of a deposition not

used at trial may be taxed if taking the deposition was reasonable as part of the pretrial

preparation of the case, rather than for the convenience of counsel, or if the deposition was

required for a dispositive motion. *Id* at 678-79; *see also Principe v. McDonald's Corp.*, 95 FRD

34, 37 (ED Va 1982). In other words, to be taxable, depositions must not be merely for

discovery. *See Murphy v. Amoco Prod. Co*., 558 F Supp 591, 594 (D ND 1983), *aff'd*, 729 F2d

522 (8th Cir 1984) ("[c]opies of depositions noticed by the prevailing party . . . are more in the

nature of an expense than of a taxable cost").

The depositions of Alfonso, Mark and Eric Crowl, Ryan, and Bellinazzo were submitted

by the parties in connection with the summary judgment motion and were reasonably necessary

to the disposition of this case. Defendants do not explain why the other two deposition

transcripts were necessary for use in the case. However, both Peterson and Dassonville

submitted declarations in support of defendants' summary judgment motion, and their

depositions likely were taken by Alfonso, not by defendants. Peterson was a key witness to the

events of this case, and Dassonville had knowledge of the computer systems maintained by Tri-

Star and the chain of custody of Alfonso's hard drive. "A deposition need not be absolutely

indispensable to justify an award of costs; rather, it must only be reasonably necessary at the

time it was taken, without regard to later developments that may eventually render the deposition

unneeded at the time of trial or summary disposition." *Frederick v. City of Portland*, 162 FRD

139, 143 (D Or 1995) (citing cases).  Accordingly, each of the depositions appears to be reasonably necessary at the time it was taken.

Unfortunately, defendants did not submit the necessary supporting documentation along with their Bill of Costs as required by LR 54.1(a)(1).  *See also Harrington v. Ward*, Civil No. 06-460-CL, 2006 WL 5157748, *3 (D Or Dec. 21, 2006) (awarding costs for deposition transcriptions after defendants submitted a revised affidavit including invoices relating to the transcription costs); *Mindt v. Prudential Ins. Co. of Am.*, Civil No. 03-761-ST, 2004 WL 1878339, *4 (D Or Aug. 23 2004) (denying costs for  failure to provide supporting documentation with leave to refile).  Defendants are allowed one week to submit the appropriate documentation showing the payments made to the reporting companies for these depositions.

With respect to the deposition transcript fees, the court must again address the issue of Alfonso's ability to pay.  As discussed above, the parties have failed to provide sufficient evidence to permit this court to ascertain Alfonso's financial condition.  She is certainly not destitute since she owns her own business.  On the other hand, imposing substantial costs in this case could deter future litigants from pursuing valid claims under ERISA, which would run contrary to Congressional intent that the act be "liberally construed in favor of protecting participants in employee benefit plans."  *McElwaine*, 176 F3d at 1172.  Given that the requested deposition costs are not substantial and in the absence of evidence that Alfonso is indigent, the court will award the deposition transcript fees to defendants if provided with adequate supporting  documentation.

## **ORDER**

For the reasons discussed above, defendants' motion for an award of attorney fees and costs (docket #84) is DENIED as to attorney fees, DENIED as to expert witness fees, and

18 - OPINION AND ORDER

DEFERRED as to deposition costs.  On or before August 21, 2009, defendants shall submit the

appropriate documentation substantiating the requested deposition costs.  If that documentation

is timely submitted, then the court will grant the Bill of Costs in that amount.

DATED this 14th day of August, 2009.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge